UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>Kyle T. Lierman,<br>Felicia Lierman,<br><br>Debtors | Chapter 7<br><br>Bankruptcy No. 23-00749 |
| Felicia Lierman,<br>Plaintiff<br>vs.<br><br>United States Department of Education,<br>Defendant | Adversary No. 24-09014 |

# RULING ON THE DISCHARGEABILITY OF PLAINTIFF'S STUDENT LOANS

This matter came before the Court for trial on the dischargeability of student loans. (Doc. 28). Attorney Wilford L. Forker appeared for Felicia Lierman ("Plaintiff"). Attorney Brian J. Keogh appeared for the United States Department of Education ("DOE"). The Court heard arguments and took the matter under advisement. Post-trial briefs were filed on June 18, 2026. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## I. STATEMENT OF THE CASE

Plaintiff filed this adversary proceeding on May 30, 2024, seeking a determination that her student loan debt is dischargeable under 11 U.S.C. § 523(a)(8). Plaintiff claims repaying the student loans would cause her an "undue hardship." For the reasons stated below, the Court finds that under the "totality of the circumstances" test, Plaintiff's student loans would not impose an undue hardship and are therefore nondischargeable.

## II. FINDINGS OF FACT

Based on the evidence presented at trial, the Court makes the following findings of facts. Plaintiff is thirty-four years old. She resides in Sergeant Bluff, Iowa, with her husband, age thirty-five and her two children, ages fifteen and four. The couple has been married for two years and together for five. Their annual household income is $130,052. Plaintiff owns the family residence solely in her name. Plaintiff testified she bought the home in 2019 for $205,000. She estimates it is now worth between $260,000 and $270,000. Approximately $140,000 remains on the mortgage. Although Plaintiff is the sole owner, her husband contributes to the mortgage payments.

Plaintiff attended Western Iowa Tech Community College before transferring to Briar Cliff University, where she earned a Bachelor of Science in Nursing in 2020. Federal Pell Grants covered her education at Western Iowa Tech. Financial

assistance from her father and federal student loans financed her education at Briar Cliff.

Plaintiff borrowed $45,000 in student loans, and the balance has grown to $50,918.19. The debt consists of eleven student loans that were consolidated into one. Plaintiff made monthly payments of $30 on her student loans until they were paused due to COVID-19. Repayment will resume in November 2026.

Plaintiff is a registered nurse. She works thirty-six hours per week at Firefly for an hourly wage of $32.10 and ten hours per week at Ave Medical Spa earning $33.00 per hour. She does not anticipate any significant changes in employment because her current schedule provides flexibility to care for her children.

Plaintiff receives $52 per week in child support, which she places into a college savings account. She has accumulated approximately $22,000 for that purpose. Plaintiff also has a retirement savings account of about $12,000.

Plaintiff's husband works in sales for Sterling Computers. He earns approximately $50,000 annually plus a 2.5% commission. His income recently declined after he left a higher-paying position in plumbing sales, resulting in a reduction of the household's annual income of approximately $9,700 from the previous year.

Plaintiff drives a 2018 Jeep Grand Cherokee. Her monthly payments are approximately $405, and she expects to pay off the vehicle in July 2027. Plaintiff's

husband drives a 2010 Ford F-150 with monthly payments of $700. Her husband's remaining student loan balance is approximately $4,000 with monthly payments of about $92.

They had several unexpected expenses during the past year. These included garage door repairs of approximately $1,200 to $1,300, truck repairs of approximately $1,000, and an unexpected 2024 tax liability of approximately $6,000. They accumulated credit card debt during this period.

Plaintiff has received financial assistance from family members throughout her adult life. Her father and grandfather together provided $900 per week while she attended school. Plaintiff's father also provided a $20,000 down payment toward her first home and loaned additional funds to cover the 2024 tax obligation. Plaintiff's grandfather contributed approximately $40,000 towards the purchase of her home. Plaintiff testified that her father-in-law gifted the couple $20,000 for Christmas. They do not expect to inherit any assets from family members.

Their monthly expenses include approximately $215 per week for daycare and preschool. Bank records show recurring discretionary spending, including frequent restaurant, fast-food, and coffee purchases. They also spend $162 per month for nutritional supplements not prescribed by a physician. They dined out at least 10 times in April 2025. Some dining out occurred while in another state for Plaintiff's

daughter's dance competition, and some occurred while at home in the Sioux City area.

Plaintiff and her husband filed for bankruptcy September 19, 2023. Plaintiff later filed this case seeking to discharge her student loans. She has not pursued available repayment options. The DOE objected to the discharge.

## III. DISCUSSION

Section 523(a)(8) of the Bankruptcy Code provides that student loan debt is generally nondischargeable "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents . . . ." 11 U.S.C. § 523(a)(8). A debtor bears the burden of proving undue hardship by a preponderance of the evidence. Educ. Credit Mgmt. Corp. v. Jesperson, 571 F.3d 775, 779 (8th Cir. 2009). The Bankruptcy Code does not define "undue hardship." The Eighth Circuit has adopted a totality of the circumstances test to determine "undue hardship." Long v. Educ. Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 553 (8th Cir. 2003) (citing Andrews v. S. D. Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702, 704 (8th Cir. 1981)). Under that test, bankruptcy courts consider: "(1) the debtor's past, present, and reasonably reliable future financial resources; (2) the debtor's reasonable and necessary living expenses; and (3) any other relevant facts and circumstances." Martin v. Great Lakes Higher Educ. Grp.

(In re Martin), 584 B.R. 886, 891 (Bankr. N.D. Iowa 2018) (citing In re Long, F.3d at 554). The Court will address each factor in turn.

## A. Plaintiff's Past, Present, and Reasonably Reliable Future Financial Resources

To meet the first part of the test, Plaintiff must prove she lacks "reasonably reliable current or future financial resources to make payments on her student loan[s]." See Hurst v. S. Ark. Univ. (In re Hurst), 553 B.R. 133, 136 (B.A.P. 8th Cir. 2016). In evaluating past, present, and reasonably reliable future financial resources, courts examine the debtor's current income, future earning capacity, work history, opportunities for advancement, age, and any other available financial resources. Limkemann v. United States Dep't of Educ. (In re Limkemann), 314 B.R. 190, 194, 196–97 (Bankr. N.D. Iowa 2004) (citation omitted); Duncanson v. Bank of N.D. (In re Duncanson), No. 20-00884, 2024 WL 3507047, at *4 (Bankr. N.D. Iowa July 19, 2024), *aff'd*, 671 B.R. 269. Courts must also assess the income or earning potential of the debtor's spouse if they "contribute to the household finances . . . ." Sederlund v. Educ. Credit Mgmt. Corp. (In re Sederlund), 440 B.R. 168, 172 n.10, 173 (B.A.P. 8th Cir. 2010).

In making this determination, the Court has previously considered factors like a debtor's "age and remaining years in the workforce," see In re Duncanson, 2024 WL 3507047, at *4, In re Martin, 584 B.R. at 892, Kinney v. Nat'l Collegiate Master Student Loan Tr. I (In re Kinney), 593 B.R. 618, 623 (Bankr. N.D. Iowa 2018), and

ability to secure employment in the debtor's chosen field, see Ashline v. United States Dep't of Educ. (In re Ashline), 634 B.R. 799, 803 (Bankr. N.D. Iowa 2021), In re Swafford, 604 B.R. 46, 51 (Bankr N.D. Iowa 2019), Fern v. FedLoan Servicing (In re Fern), 553 B.R. 362, 367 (Bankr. N.D. Iowa 2016), *aff'd*, 563 B.R. 1. Plaintif has not demonstrated a long-term inability to repay her student loans. Plaintiff is only thirty-four years old and earns approximately $75,000 a year in her chosen profession as a registered nurse. Plaintiff testified that she expects no significant change in her employment or income because she receives both flexibility with benefits and her kids' schedules. Her benefits include a retirement account. Plaintiff has $12,000 in the account and almost doubled contributions since the bankruptcy filing.

Plaintiff's income is supplemented by her husband's income of $50,000 annually plus commission. Her husband's recent career change resulted in a reduction in his income, but household income has increased by $10,000 since the couple's joint bankruptcy filing. Furthermore, the couple agrees better career opportunities are available for Plaintiff's husband.

Plaintiff's financial resources also include significant equity in her home. See Golczewski v. Univ. Acct. Serv. (In re Golczewski), 371 B.R. 392, 397, 399 (Bankr. N.D. Iowa 2006) (finding that the debtor's $5,000 home equity was a "significant asset" to be considered in assessing their financial resources). Plaintiff noted the

house has increased significantly in value, resulting in equity of approximately $55,000.

Plaintiff argues she lacks reasonably reliable financial resources because she and her husband are unlikely to receive promotions in their current positions. This argument is not supported by the record. See, e.g., Lamb v. Navy Fed. Credit Union (In re Lamb), No. BK20-40112, 2021 WL 346541, at *4 (rejecting the debtor's argument concerning limited advancement opportunities where the testimony was not supported by any evidence). Moreover, Plaintiff has failed to show she made unsuccessful attempts to seek other employment. See Wilson v. Educ. Credit Mgmt. Corp. (In re Wilson), 270 B.R. 290, 294 (Bankr. N.D. Iowa 2001); In re Sederlund, 440 B.R. at 174–175 ("A debtor is not entitled to an undue hardship discharge of student loan debts when his current income is the result of self-imposed limitations, rather than lack of job skills . . . ." (quoting Jesperson, 571 F.3d at 782)). Plaintiff stated her intent to remain in her job because of her flexible work schedule and benefits. Her husband elected not to apply for other opportunities because he is waiting for other positions to become available at his current company. Self-imposed limitations do not support undue hardship in the Eighth Circuit. See Piccinino v. United States Dep't of Educ. (In re Piccinino), 577 B.R. 560, 566 (B.A.P. 8th Cir. 2017) ("[The debtor's] employment decisions and her perception of future employment prospects reflect elements of self-imposed conditions which weigh

against dischargeability."). While the couple's income may not be as substantial as they would prefer, nothing in the record indicates that the couple is incapable of increasing future earnings.

Plaintiff also points out that she and her husband are not expecting an inheritance. An inheritance is often taken into account as a potential source of additional income. See In re Dolan, 256 B.R. 230, 237 n.8 (Bankr. D. Mass. 2000). The lack of inheritance, however, is generally not taken into consideration. It is another way of saying there is no more income to take into account. It may be noted in very close cases to point out there is nothing more to help make payment. This, however, is not one of those very close cases.

This first factor, Plaintiff's overall financial resources, shows good resources from which to pay her student loans.

**B. Plaintiff's Reasonable and Necessary Living Expenses**

The second thing Plaintiff must show is that her living expenses are "reasonable and necessary." See In re Golczewski, 371 B.R. at 400. Reasonable and necessary expenses are those that are modest, rather than extravagant, and commensurate with the debtor's resources. In re Limkemann, 314 B.R. at 195 (citation omitted); Jesperson, 571 F.3d at 780. A debtor need not live in poverty and is entitled to a minimal standard of living to satisfy needs for clothing, shelter, medical treatment, and food. In re Martin, 584 B.R. at 893 (citation omitted); Lee v.

Regions Bank & Student Loan Guar. Found. (In re Lee), 345 B.R. 911, 915 (Bankr. W.D. Ark. 2006) (citation omitted).

Plaintiff asserts her expenses are reasonable and necessary because the family of four are living paycheck to paycheck. Each month, the family pays $1,410.83 for the mortgage, $150 for home maintenance and repair, $1,282.15 for food, $100 for housekeeping supplies, $300 for apparel & services, $97 for personal care, $83 for uninsured medical costs, $405 for miscellaneous items, $92 for the husband’s student loans, $405 to lease the jeep, $700 to lease the truck, $450 for car fuel, $984 for utilities, $860 for daycare, and $133.32 for life insurance. In total, the family's monthly expenses are $7,452.30. Plaintiff also contributes to a retirement account and a college savings account. The family also experienced unexpected expenses for repairing their garage door and truck in the amount of $2,200 to $2,300. However, the budget includes $150 set aside for such repairs already, which nearly covers that expense.

The DOE argues Plaintiff’s food costs are high and include expenses for eating out. Although occasional restaurant meals are consistent with maintaining a minimal standard of living, excessive dining expenditures weigh against the discharge of student loan debt. See Young v. United States Dep’t of Educ. (In re Young), 563 B.R. 540, 547, 551 (Bankr. W.D. Ark. 2016). Plaintiff testified that the family dines out only around two to three times a month, including for coffee. As

the DOE pointed out, Plaintiff's bank statements tell a different story. In April 2025, she purchased coffee 15 times and dined out at least 10 times during that month alone. These discretionary food expenses total about $480.

"While these additional expenses are not lavish or unreasonable per se, there are some opportunities for reduction." In re Swafford, 604 B.R. at 52. Plaintiff's frequent dining out could be reduced to minimize expenses. See id.; In re Young, 563 B.R. at 550–51 (finding that spending $206 per month for a family of four to eat out "suggests that the debtors' frequent meals out are a convenience rather than a necessity"). The discretionary food expenses push the family's expenditures higher than necessary.

The DOE argues Plaintiff spent over $600 to eat out and highlights many transactions from Casey's General Store. But these purchases could be for gas, rather than food. See In re Young, 563 B.R. at 551 n.16. This Court will not engage in speculation that these are "eating out" costs instead of gas or other basic needs. See In re Hurst, 553 B.R. at 138 ("The Eighth Circuit has said on more than one occasion that a court may not engage in speculation when determining net income and reasonable and necessary living expenses." (quoting Walker v. Sallie Mae Serv. Corp. (In re Walker), 650 F.3d 1227, 1233 (8th Cir. 2011) (citation modified))). Plaintiff's suggestion that some eating out is necessitated by being out of town for

dance competitions also does not change the analysis. That is a choice and a discretionary expense, not a minimal lifestyle item.

The DOE also points to Plaintiff's $162 monthly expenditure on nutritional supplements. Plaintiff, her husband, and children are in good health. No doctor or medical professional prescribed the supplements. Plaintiff provided no evidence of special dietary needs to support a finding of necessary expense. See In re Duncanson, 2024 WL 3507047, at *5 ("Debtor's elevated personal care, medical, and food expenses are necessary give[n] her prior surgeries, her necessary medications, and **special dietary needs**.") (emphasis added). While Plaintiff "is not expected or required to implement every conceivable cost-saving measure," see In re Limkemann, 314 B.R. at 195, the nutritional supplements also appear to exceed what is necessary to maintain a minimal standard of living.

The DOE also suggested retirement savings and contributions to a college savings account are unnecessary. The Court does not consider the modest expenditures in this case to exceed reasonable and necessary expenditures. Viewed as a whole, Plaintiff's budget does reflect some discretionary spending that could be redirected toward repayment of the student loans without depriving Plaintiff or her dependents of a minimal standard of living. Stated another way, Plaintiff's monthly expenses leave room for the type of "belt-tightening" cuts that come with bankruptcy. See In re Gourley, 549 B.R. 210, 216, 220–221 (Bankr. N.D. Iowa 2016).

### C. Other Relevant Facts and Circumstances

The final factors to be considered are "the unique facts and circumstances that surround [this] particular bankruptcy." In re Long, 322 F.3d at 554. The Court will "take account of all other relevant [factors] . . . that could impact a debtor's ability to pay back their student loans." In re Duncanson, 2024 WL 3507047, at *5. See In re Kinney, 593 B.R. at 624. Relevant factors may include eligibility for income-driven repayment plans, and good faith efforts to repay the student loans. In re Piccinino, 577 B.R. at 566–67; In re Martin, 584 B.R. at 895.

The DOE points out that Plaintiff made no student loan payments during 2023 or 2024 and has not enrolled in a repayment plan. The DOE suggests these facts demonstrate Plaintiff's lack of good faith effort to repay her loans. The Court rejects the DOE's argument. Eligibility for the repayment plan is not a relevant factor here. Plaintiff was not yet required to make post-Covid payments. See Fern v. FedLoan Servicing (In re Fern), 563 B.R. 1, 5 (B.A.P. 8th Cir. 2017) (rejecting the DOE's argument that the availability of a repayment plan constitutes an ability to pay where the debtor "has never been required to make a payment . . . ."). Plaintiff's student loan payments were paused due to Covid and will not resume until November 2026.

Plaintiff asks this Court to give additional consideration to the family's unexpected expenses and lack of inheritance. The Court has already addressed these arguments above and does not believe they merit separate or additional consideration

here. As such, the Court finds that Plaintiff failed to show additional factors which may impact her ability to repay the student loans.

## IV. CONCLUSION

Considering the totality of the circumstances, the evidence does not establish that Plaintiff qualifies for a discharge of her student loans under section 523(a)(8). Plaintiff's ability to repay her student loans is shown by her stable employment, good income, spouse's salary, and financial assistance from family. Plaintiff could reduce some unnecessary food and non-essential food and dietary expenses to help in her ability to repay while still maintaining a minimal standard of living. No other relevant facts or circumstances affect Plaintiff's ability to make payments. Plaintiff has thus failed to meet her burden of proving undue hardship.

**WHEREFORE**, Plaintiff's Complaint to Determine Dischargeability of Educational Loans is DENIED.

**FURTHER**, judgment shall enter accordingly in favor of the DOE.

Ordered: August 31, 2026

Thad J. Collins
Chief Bankruptcy Judge